No. 25-7162

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

PATRICK FEINDT, JR., et al.,
Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA
Defendant-Appellee.

---

On Appeal from the United States District Court
for the District of Hawaii
No. 1:22-cv-00059-LEK-KJM

---

BRIEF OF THE APPELLEE

---

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN D. GUYNN
Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch

CAROLINE W. STANTON
Trial Attorney, Environmental Torts
1100 L St. NW
Washington, D.C. 20005
Email: caroline.w.stanton@usdoj.gov
Telephone: 202-598-9070

*Counsel for Appellees*

# TABLE OF CONTENTS

Page(s)

Table of Contents ............................................................................................. ii

Table of Authorities ........................................................................................ iii

Statement of Jurisdiction ................................................................................. 1

Statement of the Issue ...................................................................................... 1

Statement of the Case ...................................................................................... 1

    A. The District Court Held a Bellwether Trial on Causation and
       Damages for Personal Injury Plaintiffs' FTCA Claims. ...................... 1

    B. Plaintiffs Proved Only Limited Short-Term Physical Injuries. ........... 2

    C. The District Court Issued Damages Awards to All 17
       Bellwether Plaintiffs. ......................................................................... 12

Summary of the Argument .............................................................................. 13

Standard of Review ......................................................................................... 14

Argument ........................................................................................................ 15

  I. The District Court Applied the Proper Analysis in Determining
     Whether the Plaintiffs Proved Emotional Distress Damages. ................ 15

    A. Ninth Circuit and Hawaii Law Do Not Require Inferential
       Emotional Distress Findings. .............................................................. 16

    B. The District Court's Emotional Distress Findings Have
       Extensive Record Support. .................................................................. 20

  II. The District Court Awarded Damages Commensurate with Its
     Causation and Injury Findings. ............................................................... 24

  III. There is No Requirement for the District Court to Award Damages
     Pursuant to a Mathematical Formula. ..................................................... 26

Conclusion ...................................................................................................... 30

Statement of Related Cases ............................................................................. 31

Certificate of Service ...................................................................................... 32

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aana v. Pioneer Hi-Bred Int'l, Inc.*,
  No. CIV. 12-00231 LEK, 2014 WL 806224 (D. Haw. Feb. 27, 2014)................25

*Anderson v. City of Bessemer City, N.C.*,
  470 U.S. 564 (1985) ................................................................................20

*Campbell v. Animal Quarantine Station*,
  632 P.2d 1066 (Haw. 1981)....................................................... 14, 16, 26

*Castro v. Melchor*,
  414 P.3d 53 (Haw. 2018)................................................................ 15, 28

*Doe v. Lincoln Military Prop. Mgmt. LP*,
  No. 20-cv-00224-GPC-AHG, 2020 WL 5587488 (S.D. Cal. Sept. 18, 2020).....24

*Frito–Lay, Inc. v. Local 137, Int'l Bhd. of Teamsters*,
  623 F.2d 1354 (9th Cir. 1980)...............................................................14

*Green v. Costco Wholesale Corp.*,
  1995 WL 778684 (Haw. Cir. Ct., Arb. Oct. 1995)................................24

*Johnson v. Sartain*,
  375 P.2d 229 (Haw. 1962)......................................................................15

*Lauer v. Young Men's Christian Ass'n of Honolulu*,
  557 P.2d 1334 (Haw. 1976)............................................................ 28, 29

*McCarthy v. United States*,
  870 F.2d 1499 (9th Cir. 1989) ...................................................... 15, 16, 24

*Montalvo v. Lapez*,
  884 P.2d 345 (Haw. 1994)............................................................. 25, 26

*Oberson v. U.S. Dep't of Agric., Forest Serv.*,
  514 F.3d 989 (9th Cir. 2008) ...............................................................21

iii

*Pac. Shores Props., LLC v. City of Newport Beach,*
    730 F.3d 1142 (9th Cir. 2013)................................................................14

*Shaw v. United States,*
    741 F.2d 1202 (9th Cir. 1984)................................................................15

*Spitzke v. United States,*
    914 F.2d 263 (9th Cir. 1990).......................................................... 15, 16

*Story Parchment Co. v. Paterson Parchment Paper Co.,*
    282 U.S. 555 (1931) ...............................................................................14

*Sutton v. Earles,*
    26 F.3d 903 (9th Cir. 1994) ......................................................... passim

*Tipton v. Camp Pendleton & Quantico Housing, LLC,*
    2022 WL 5133481 (S.D. Cal. Oct. 4, 2022).........................................25

*Tortu v. Las Vegas Metrop. Police Department,*
    556 F.3d 1075 (9th Cir. 2009)................................................................17

*Tourgeman v. Nelson & Kennard,*
    900 F.3d 1105 (9th Cir. 2018)......................................................... 18, 26

*United States v. English,*
    521 F.2d 63 (9th Cir. 1975)...................................................................26

*United States v. Hinkson,*
    585 F.3d 1247 (9th Cir. 2009)................................................................24

*Viveiros v. State,*
    513 P.2d 487 (Haw. 1973)............................................................. 14, 15

*Zhang v. Am. Gem Seafoods, Inc.,*
    339 F.3d 1020 (9th Cir. 2003)................................................................17

iv

**Statutes**

28 U.S.C. § 1291 ....................................................................................1, 6

28 U.S.C. § 1346(b)(1)...............................................................................1

**Rules**

Fed. R. Civ. P. 52(a)(6)...........................................................................14

## STATEMENT OF JURISDICTION

Plaintiffs–Appellants invoked the district court's subject matter jurisdiction pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1). Appellants' Corrected Excerpt of Record, DktEntry 13.1, ("ER") 6. The district court entered final judgment on behalf of the bellwether Plaintiffs on September 9, 2025. ER-2. Plaintiffs timely filed a notice of appeal on November 10, 2025. ER-2874. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

1.      Whether the district court's damages awards to seven of the seventeen bellwether Plaintiffs were clearly erroneous such that all objective appraisals would result in different awards?

## STATEMENT OF THE CASE

### A.      The District Court Held a Bellwether Trial on Causation and Damages for Personal Injury Plaintiffs' FTCA Claims.

This case concerns the November 20, 2021 release of JP-5 jet fuel from the U.S. Navy's Red Hill Bulk Fuel Storage Facility (the "Fuel Release"). ER-7-9. The Fuel Release impacted a nearby well that supplied water to the Joint Base Pearl Harbor–Hickam ("JBPHH") public drinking water system, which is operated by the Navy and supplies drinking water for individuals working and residing on or near JBPHH. ER-10-13.

1

Thousands of individuals subsequently filed claims under the FTCA, seeking compensation for personal injuries allegedly resulting from the spill. ER-7, n.2. In February 2023, the parties selected six bellwether families to proceed to trial: (1) Kevin Aubart; (2) Richelle Dietz and her minor children B.D. (age 10)[1] and V.D. (age 3); (3) Patrick Feindt, Jr. and his minor children P.G.F. (age 4) and T.F. (age 20 months); (4) Nastasia Freeman and her minor children N.F. (age 11), K.F. (age 7), and D.F. (age 4); (5) Sheena Jessup and her minor children B.B.J. (age 15), B.J.J. (age 13), N.J. (age 4), and D.J. (age 10 months); and (6) Elizabeth Witt. ER-6.

In 2023, the United Sates admitted that it breached its duty to Plaintiffs who owned or leased premises on the JBPHH water line to exercise ordinary care in the operation of Red Hill, resulting in the May 6, 2021 and November 20, 2021 spills. ER-14. Accordingly, the only remaining issues for trial were whether the breach was a legal cause of the harm alleged by the bellwether Plaintiffs, and if so, the measure of damages to be awarded. ER-14.

### B. Plaintiffs Proved Only Limited Short-Term Physical Injuries.

Prior to trial, the district court excluded the opinions of Plaintiffs' sole expert medical toxicologist, Dr. Steven Bird, that (1) the dose and duration of JP-5 were

---

[1] The listed ages for the minor Plaintiffs reflect their age at the time of the Fuel Release in November 2021.

sufficient to cause long term injuries; (2) studies support that exposure to jet fuel can result in long-term health effects to various organ systems; (3) many of Plaintiffs are or have experienced long-term effects from the JP-5 exposure; and (4) there is a need for medical surveillance of exposed individuals. United States' Supplemental Excerpt of the Record ("SER") 41. Due to the lack of requisite expert evidence, the district court subsequently granted the United States' motion for summary judgment on Plaintiffs' claims regarding risk of latent injury and medical monitoring. SER-20-21.

In April–May 2024, the district court conducted a two-week trial. ER-6. Plaintiffs sought recovery for extensive alleged injuries, including long-term asthma for P.R.F., ER-2471, "behavioral abnormalities" for N.J., ER-2556, neuropathy and balance disturbances for B.D., ER-2506-2507, and long-term respiratory challenges for V.D., ER-2510. After receiving testimony from 41 witnesses and more than 650 exhibits, the district court issued 173-page findings of fact and conclusions of law. *See generally* ER-6. The district court found that Plaintiffs had proven that the Fuel Release was the legal cause of short-term injuries after November 20, 2021, and "until approximately when the individual plaintiffs reported that they stopped using the household water supplied by the JBPHH water distribution system" in late November and early December 2021. ER-17. The district court found that Plaintiffs had proven specific causation for

3

physical injuries of "headache, eye irritation, dizziness, neurological symptoms, and gastrointestinal issues," but also found that Plaintiffs had failed to prove specific causation for many claimed physical injuries. ER-18. Specifically, because Plaintiffs failed to provide the expert testimony required by Hawaii law, the district court found that Plaintiffs had failed to prove any long-term physical injuries. SER-18-19; ER-271. The district court explicitly found Plaintiffs had failed to prove causation for their claimed injuries of "heavy or irregular menstrual bleeding; autism; cancer; suppressed immune system; meningitis; hernias; arthritis; brain fog; migraines; bloody noses or tremors." ER-170-171.

The district court also considered extensive testimony from the bellwether Plaintiffs, their family members, Plaintiffs' expert witnesses clinical psychologist Dr. Melissa Vargo and psychiatrist Dr. Andrew Clark, and the United States' expert witness clinical psychologist Dr. Eric Smith, when evaluating Plaintiffs' emotional distress claims. ER-92-93. The district court likewise considered extensive testimony from each Plaintiff regarding their disruption and loss of enjoyment of life in support of their claim for hedonic damages. ER-141-154. The district court then made detailed causation findings regarding each Plaintiff, including the appealing minors:

4

### 1. B.D.

B.D. was ten years old at the time of the release. ER-29.[2] The district court found that the Fuel Release was the legal cause of B.D.'s symptoms from November 26, 2021 to December 3, 2021, and limited its causation finding to the symptoms of "gastrointestinal issues including nausea, vomiting, and diarrhea; rashes; sore throat; dry skin; fatigue; and a spike in the severity of preexisting headaches." ER-33. The district court found that B.D. experienced headaches from a preexisting condition (Chiari I malformation) at the time of the Fuel Release and therefore apportioned his damages between the Fuel Release and his preexisting condition. ER-33-34. The district court expressly rejected a finding of causation for B.D.'s claimed injuries of "loss of balance, diminished capacity to feel sensation in parts of his body, . . . sensation of heat or burning in extremities," and worsened migraines beyond December 3, 2021. ER-32-33. *Contra* App. Br. 6-7 (alleging damages were insufficient to compensate for injuries including "neuropathy and impaired temperature sensation," "balance disturbance," and "worsened migraines").

The district court also made detailed findings regarding B.D.'s anxiety and anxiety-related conditions. The district court did not credit Plaintiffs' expert's

---

[2] Appellants incorrectly identify B.D. as thirteen at the time of the release. *Compare* App. Br. 6 *with* ER-29.

diagnosis that B.D. had ongoing psychiatric harm from the Fuel Release. ER-102-104. Instead, the court relied on the United States' expert's analysis that, while the Fuel Release exacerbated B.D.'s anxiety and worry, the exacerbation had abated and returned to his pre-spill baseline. *Id. Contra* App. Br. 6 (arguing that the damages award is insufficient in light of Dr. Clark's diagnosis). The Court awarded B.D. general damages for emotional distress from after the Fuel Release until his examination by the United States' expert on September 8, 2023. ER-104.

The district court awarded B.D. $21,000 in total damages, consisting of (1) $20,000 in general damages, including both his physical injuries and emotional distress and (2) $1,000 in hedonic damages. ER-176, 178.

### 2. V.D.

V.D. was three years old at the time of the spill. ER-34.[3] The district court found that the Fuel Release was the legal cause of V.D.'s symptoms from November 26, 2021 to December 3, 2021, and limited its causation finding to stomach pain, vomiting, diarrhea, rash, dry skin, and shortness of breath. ER-34-37. The district court expressly rejected any finding of causation for symptoms experienced or diagnosed after December 3, 2021, including V.D.'s asthma diagnosis. ER-37.

---

[3] Appellants incorrectly identify V.D. as five years old at the time of the spill. *Compare* App. Br. 7 *with* ER-34.

The district court found that V.D. had "little if any recollection" of the fuel release and that Plaintiffs have not shown that the fuel release was a substantial factor in causing V.D.'s emotional distress nor that V.D. would require future psychological or mental health care for any emotional distress. ER-104-105.

The district court awarded V.D. $11,000 in total damages, consisting of (1) $10,000 in general damages and (2) $1,000 in hedonic damages. ER-177-178.

### 3. P.G.F.

P.G.F. was four years old at the time of the spill. ER-43. The district court found that the Fuel Release was the legal cause of P.G.F.'s symptoms from December 13, 2021 to December 19, 2021, including vomiting, diarrhea, and abdominal pain. ER-43-44, 46. The district court found that P.G.F.'s injuries preexisted the Fuel Release, and, therefore, apportioned damages between the Fuel Release and her preexisting abdominal pain, nausea, vomiting, and diarrhea. ER-45-46. The district court expressly rejected a finding of causation for P.G.F.'s alleged injuries occurring after December 19, 2021, including "chronic cough, airway edema, bronchial wall thickening, behavioral setbacks and regression in toilet training and language development." ER-46. *Contra* App. Br. 8 (alleging damages were insufficient for injuries including "regression in toileting and language" and gastrointestinal symptoms lasting into "late December 2021.").

The district court found that P.G.F. would need future psychological care for emotional distress caused in part by the fuel release. ER-111. However, the court also found that the emotional distress predated the Fuel Release, and that the legal cause of her emotional distress was from medical conditions that did not resolve prior to the fuel release as well as post-release separation from family members— none of which was legally caused by the Fuel Release. ER-110-111. Accordingly, the district court apportioned the damages for emotional distress equally among the Fuel Release, the medical condition, and the family separation. ER-111. The district court awarded P.G.F. $4,953.36 in special damages for emotional distress, amounting to one-third of the cost of the future care opined at trial. ER-112.

The district court awarded P.G.F. $15,953.36 in total damages, consisting of (1) $10,000 in general damages; (2) $1,000 in hedonic damages; and (3) $4,953.36 in special damages for future medical expense for psychological care. ER-177-178.

### 4. T.F.

T.F. was approximately 20 months old at the time of the Fuel Release. ER-47. The district court found that the Fuel Release was the legal cause of T.F.'s symptoms from November 26, 2021 to December 19, 2021, including nausea, vomiting, diarrhea, and difficulty breathing. ER-47-49. The district court found that T.F.'s cough and wheezing were preexisting at the time of the spill and therefore apportioned his damages between the Fuel Release and his preexisting

conditions. ER-49. The district court expressly rejected a finding of causation for T.F.'s symptoms experienced or diagnosed after December 19, 2021, "including asthma, lung damage, abdominal pain, dermatitis, and elevated mast cells." ER-49. *Contra* App. Br. 9 (arguing the damages award is insufficient for injuries including "acute and chronic inflammation" and asthma, including daily use of inhalers).

The district court found that T.F. was experiencing emotional distress, but that the legal cause of that emotional distress was family separation rather than the Fuel Release. ER-113. The district court did not credit Dr. Clark's diagnosis of Other Specified Trauma and Stressor Related Disorder as a result of the Fuel Release. ER-112-113. *Contra* App. Br. 9 (arguing that the damages award is insufficient to compensate for emotional distress injuries including Other Specified Trauma and Stressor Related Disorder, family separation, and fear of doctors).

The district court awarded T.F. $4,000 in total damages, including: (1) $3,000 in general damages and (2) $1,000 in hedonic damages. ER-177-178.

### 5. D.F.

D.F. was four years old at the time of the Fuel Release. ER-60. The district court found that the Fuel Release was the legal cause of D.F.'s symptoms from November 28, 2021 to December 3, 2021, including nausea and vomiting. ER-62. The district court expressly rejected any finding of causation for injuries experienced or diagnosed more than one month after the Fuel Release, including

continued gastrointestinal symptoms, tremors, dizziness, memory loss, seizures, autism, or behavioral difficulties. ER-61-62. *Contra* App. Br. 10 (arguing that the damages award is insufficient for injuries including toilet regression, lost speech, deterioration in speech, seizures, and tremors).

The court found that D.F.'s behavioral difficulties predated the fuel release and that Plaintiffs had failed to demonstrate by a preponderance of the evidence that the fuel release is a legal cause of D.F.'s psychological injuries. ER-119-122.

The district court awarded D.F. $11,000 in total damages, including: (1) $10,000 in general damages and (2) $1,000 in hedonic damages. ER-177-178.

### 6. D.J.

D.J. was ten months old at the time of the Fuel Release. ER-82. The district court found that the Fuel Release was the legal cause of D.J.'s symptoms from November 22, 2021 to December 7, 2021, including vomiting, a 24-hour fever, change in stool consistency, and rash. ER-83-85. The Court has expressly rejected claims regarding potential latent injury. SER-17-18. *Contra* App. Br. 11 (arguing that the damages award is insufficient because of the "neurological vulnerability of babies, and the unknown long-term effects of toxic exposure during infancy").

The court found that Plaintiffs failed to prove that the Fuel Release was a legal cause of emotional distress to D.J. ER-136.

10

The district court awarded D.J. $6,000 in total damages, including: (1) $5,000 in general damages and (2) $1,000 in hedonic damages. ER-177-178.

### 7. N.J.

N.J. was four years old at the time of the Fuel Release. ER-85. The district court found that the Fuel Release was a legal cause of N.J.'s physical injuries from November 26, 2021 through December 7, 2021, including nausea, vomiting, diarrhea, abdominal pain, and headache. ER-85-87. The Court found that N.J.'s symptoms of fever, chills, nausea, vomiting, diarrhea, abdominal pain, headache, and lethargy pre-dated the spill, and thus apportioned his injuries between the Fuel Release and his preexisting conditions. ER-87. The district court expressly rejected a finding of causation for any of N.J.'s symptoms experienced or diagnosed after December 7, 2021. ER-87. *Contra* App. Br. 12 (arguing that the damages award is insufficient for injuries including headaches, cough, burning eyes, and behavioral abnormalities experienced "during flushing events" after December 7, 2021).

The Court found that Plaintiffs failed to prove by a preponderance of the evidence that the Fuel Release was a legal cause of emotional distress to N.J. ER-136-138. The Court also noted that, while credible evidence indicates the family's decision to move from Hawaii was disruptive and upsetting, Plaintiffs have not proven that the Fuel Release was a legal cause for the family's choice to move out

11

of state. ER-138. *Contra* App. Br. 12 (arguing that the damages award was inadequate for injuries including "a major therapy gap after relocation due to the release," and an "extreme emotional meltdown while relocating").

The district court awarded N.J. $11,000 in total damages, including: (1) $10,000 in general damages and (2) $1,000 in hedonic damages. ER-177-178.

### C. The District Court Issued Damages Awards to All 17 Bellwether Plaintiffs.

The district court awarded general damages to all 17 bellwether Plaintiffs to compensate for pain and suffering, and, in the case of some Plaintiffs, emotional distress. ER-176-177. The general damages awards ranged from $3,000 to $75,000 per Plaintiff. ER-176-177. The district court also awarded special damages, ranging from $4,953.36 to $19,250.67 to Plaintiffs Dietz, Freeman, Jessup, and P.G.F. for future psychological care and $2,644 for lost wages to Plaintiff Feindt. ER-177-178. Finally, the district court awarded each Plaintiff $1,000 for hedonic damages for the loss of enjoyment of life. ER-178.

The district court entered final judgment for the bellwether Plaintiffs on September 9, 2025. ER-2. On November 10, 2025, B.D., V.D., P.G.F., T.F., D.F., D.J., and N.J.—the seven Plaintiffs with the lowest damages awards—filed a timely notice of appeal. ER-2874. The remaining eleven bellwether Plaintiffs did not appeal.

## SUMMARY OF THE ARGUMENT

The appealing Plaintiffs repeatedly disclaim that they are appealing the district court's causation findings. *E.g.*, App. Br. 5, 14, 15. Rather, they claim to take issue with the district court's compensatory damages awards to seven minor Plaintiffs who suffered acute symptoms, such as headache, eye irritation, dizziness, neurological symptoms, and gastrointestinal issues for a period of five to fifteen days. Although couched as a challenge to the district court's damages methodology, Plaintiffs do not appeal the application of that same methodology to those Plaintiffs that received higher awards. Instead, they argue that error only applied to the Plaintiffs with the lowest damages awards.

Plaintiffs must show that the district court committed clear error in determining damages. They cannot satisfy that heavy burden. First, Hawaii law commits both the determination of whether a Plaintiff suffered emotional distress and the value of appropriate damages to the subjective determination of the factfinder. Plaintiffs' argument for an automatic and formulaic award of emotional distress damages is contrary to law and infringes upon the province of the factfinder. Second, the district court's general damages awards are well supported in the record and are a matter of "just and reasonable inference" from the district court's findings on causation and credibility. *See Sutton v. Earles*, 26 F.3d 903, 918 (9th Cir. 1994). Mere disagreement with the court's valuation does not

13

constitute clear error. Finally, Plaintiffs' insistence that the district court must award damages pursuant to a rigid methodology is contrary to both Hawaii law that there "is no precise standard" by which to award compensatory damages and the Ninth Circuit's directive that damage awards need not be made with "mathematical certainty." *See Sutton*, 26 F.3d at 918; *Campbell v. Animal Quarantine Station*, 632 P.2d 1066, 1070 (Haw. 1981).

Because Plaintiffs cannot demonstrate that "all objective appraisals of the evidence would result in a different finding," *Viveiros v. State*, 513 P.2d 487, 489 (Haw. 1973), this Court should reject their appeal and affirm the district court's damages awards.

## STANDARD OF REVIEW

As Appellants concede, "review is for clear error." App Br. 19; *see also Sutton*, 26 F.3d at 918 (9th Cir. 1994) ("We review a district court's computation of damages under the clearly erroneous standard."). A damages award is to be upheld "so long as the evidence shows the extent of damages a matter of just and reasonable inference, although the result may be only approximate." *Sutton*, 26 F.3d at 918 (quoting *Frito–Lay, Inc. v. Local 137, Int'l Bhd. of Teamsters*, 623 F.2d 1354, 1364 (9th Cir. 1980)); *see also Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1170-71 (9th Cir. 2013) (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931)). Fed. R. Civ. P.

14

52(a)(6) ("Findings of fact . . . must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.").

The elements and amounts of compensatory damages recoverable in FTCA cases are governed by the law of the state where the tort occurred. *Spitzke v. United States*, 914 F.2d 263 (9th Cir. 1990); *Shaw v. United States*, 741 F.2d 1202, 1205 (9th Cir. 1984). The Court looks to the relevant state's case law to determine whether a given award is excessive or inadequate. *Spitzke,* 914 F.2d 263; *McCarthy v. United States*, 870 F.2d 1499, 1500 (9th Cir. 1989). Under Hawaii law, an award of damages is clearly erroneous only if "palpably not supported by the evidence, or so excessive and outrageous when considered with the circumstances of the case." *Castro v. Melchor*, 414 P.3d 53, 68 (Haw. 2018) (quoting *Johnson v. Sartain*, 375 P.2d 229, 230–31 (Haw. 1962)); *see also Viveiros*, 513 P.2d at 489 (limiting damages reversals to only when "all objective appraisals of the evidence would result in a different finding").

## ARGUMENT

### I. The District Court Applied the Proper Analysis in Determining Whether the Plaintiffs Proved Emotional Distress Damages.

Plaintiffs argue that the district court erred in holding them to their burden of proof for emotional distress damages. But neither Ninth Circuit nor Hawaii law mandate automatic emotional distress damages, as Plaintiffs claim. And while

15

Plaintiffs quarrel with the district court's causation findings under the guise of challenging damages, ample evidence in the record supports the district court's findings that five of the appealing minors were not entitled to emotional distress damages.

### A. Ninth Circuit and Hawaii Law Do Not Require Inferential Emotional Distress Findings.

Plaintiffs argue that the district court erred in imposing an "independent-proof requirement" for emotional distress damages. App. Br. 20-21. This misconstrues both the applicable law and the district court's findings.

First, Hawaii law provides broad deference to the factfinder regarding emotional distress damages:

> [J]udgment of the genuineness and seriousness of a claim of mental distress resides with the trier of fact . . . There is no precise standard by which to place a monetary value on emotional distress and disappointment, nor is the opinion of any witness required to fix a reasonable amount. In making an award of damages for emotional distress and disappointment, you should determine an amount which your own experience and reason indicates would be sufficient in light of all of the evidence.

*Campbell*, 632 P.2d at 1070 (internal citation omitted).

Plaintiffs do not grapple with the applicable standards under Hawaii law or contend that the district court's approach was erroneous under Hawaii law. *Cf. Spitzke*, 914 F.2d 263; *McCarthy*, 870 F.2d at 1500. Instead, Plaintiffs cite to Ninth Circuit law to argue for a "categorical rule" that after a finding of physical injury,

16

the factfinder "must" also infer the existence of emotional distress. App. Br. 20-21 (citing *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1030 (9th Cir. 2003) and *Tortu v. Las Vegas Metrop. Police Dep't*, 556 F.3d 1075, 1086–87 (9th Cir. 2009)). But neither *Zhang* nor *Tortu* applies Hawaii law, and thus they are of little relevance here. Moreover, neither case imposes the rule that Plaintiffs suggest.

In *Tortu*, the district court set aside the jury's damages award as excessive. The Ninth Circuit reversed because, in evaluating the damages award, the district court failed to consider emotional injury. 556 F.3d. 1075, 1086. The Ninth Circuit held that "compensatory damages *may* be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances." *Id*. (emphasis added). Likewise in *Zhang*, the Court declined to overturn a jury's award of compensatory damages under federal and Washington state law on the basis that the damages were excessive. 339 F.3d 1020, 1040 (describing other Ninth Circuit precedent as holding that "emotional damages *may* be awarded based on testimony alone or appropriate inference from circumstances") (emphasis added). Thus, these cases declined to find emotional distress awards excessive because they "may" be based on testimony or inference. Plaintiffs contort permission to consider emotional distress into a rule that a factfinder "must" automatically infer such injury despite the weight of evidence. Such a rule would usurp the role of the factfinder and conflict with Hawaii law. To the extent that

17

Plaintiffs' position is construed as arguing that the district court failed to even *consider* emotional distress after finding physical injury, App. Br. 21, that is plainly unsupported by the record. *See* ER-92-141 (the district court's analysis and findings regarding each of the 17 bellwether Plaintiffs' claimed emotional distress).

"It is one of the most basic propositions of law that the plaintiff bears the burden of proving his case, including the amount of damages." *Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1109 (9th Cir. 2018) (citation modified). Plaintiffs ask this Court to reverse that standard, remove their burden of proof, and eliminate the factfinder's ability to evaluate their claims. This Court should reject such a request.

Even if the Court were to adopt Plaintiffs' proffered rule—that a finding of physical injury *must* result in a corresponding award for emotional distress—it would still not support higher awards here. While Plaintiffs argue that the physical injuries alleged by each of the appealing minors necessarily resulted in corresponding emotional distress, Plaintiffs fail to acknowledge that the district court found that the Fuel Release was not a legal cause of all alleged injuries. For example, Plaintiffs argue that the district court erred in requiring evidence for emotional distress "apart from the acute *ongoing* physical harm the court already found." App. Br. 22. But the district court found no such thing. The court limited

its causation findings of physical injuries to those experienced in the immediate aftermath of the Fuel Release and rejected all of Plaintiffs' claims for ongoing injury. *See* ER-37 ("The Court also finds that Plaintiffs have not proven by a preponderance of the evidence that a legal cause of V.D.'s physical symptoms and conditions experienced or diagnosed after December 3, 2021, including her asthma diagnosis, was the Fuel Release."); ER-33 (finding that the Fuel Release was not a legal cause of B.D.'s symptoms after December 3, 2021); ER-46, 49 (finding that the Fuel Release was not a legal cause of P.G.F. and T.F.'s symptoms after December 19, 2021); ER-62 (limiting causation findings to physical symptoms experienced by D.F. between November 28, 2021 and December 3, 2021); ER-84, 87 (limiting causation findings to physical symptoms experienced by N.J. and D.J. between the Fuel Release and December 7, 2021).

Beyond their mischaracterization of the duration of proven physical injuries, Plaintiffs argue that the severity of physical symptoms necessitates emotional distress awards. *See* App. Br. 21 (arguing that the court erred in failing to find emotional distress for Plaintiffs that suffered "tremors, stuttering, depression, and cutting behavior after the spill"). Once again, Plaintiffs rest their argument for emotional distress damages on physical injuries that the district court found they failed to prove. ER-78-79 ("The Court finds that Plaintiffs have not shown by a preponderance of the evidence based on credible and qualified medical evidence

19

that a legal cause of B.B.J.'s . . . stuttering; tremors . . . was the Fuel Release"); *see also* ER-133, 135.[4]

Finally, Plaintiffs argue that the district court erred by holding that minor Plaintiffs could not recover emotional distress damages if they did not testify. App. Br. 23, 25. The district court applied no such rule, and in fact made emotional distress findings for both B.D. and P.G.F., neither of whom testified. *See* ER-102-104, 108-112. Plaintiffs cite nothing from the district court adopting such a rule, and their true quarrel is that the court did not credit the evidence that they offered. But the court's finding is plainly protected by Rule 52. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

### B. The District Court's Emotional Distress Findings Have Extensive Record Support.

Although framed as a dispute over the amount of damage awards, the crux of Plaintiffs' argument is a disagreement with the district court's factual findings that five of the appealing minors failed to prove that they suffered from emotional distress as result of the Fuel Release. *See* App. Br. 21 (arguing that the district court erred because it "excluded every appealing minor except B.D. from

---

[4] The minors to whom Plaintiffs apparently refer, B.B.J. and B.J.J., are not appealing.

20

emotional-distress recovery"). Such an argument is undermined by Plaintiffs' repeated concessions that they do not challenge the district court's causation findings. App. Br. 5-6 ("The point here is not to relitigate liability or causation—those are settled . . . ."); *id.* at 14 ("Its stipulation of negligence, the court's causation findings, and its determination that each minor plaintiff suffered compensable injury caused by the fuel release are now established."); *id.* at 15 ("The district court's causation and injury findings are accepted."). Because Plaintiffs do not challenge the court's factual finding that the Fuel Release was not a legal cause of emotional distress for Plaintiffs V.D., T.F., D.F., D.J., and N.J., the appropriate damages award for their alleged emotional distress is $0. The Court need not consider those claims any further.

Even if the Court were to entertain a challenge to the district court's causation findings, Plaintiffs have failed to demonstrate clear error. *Oberson v. U.S. Dep't of Agric., Forest Serv.*, 514 F.3d 989, 1000 (9th Cir. 2008) ("We review a district court's findings of both cause-in-fact and proximate cause for clear error.").

Plaintiffs offered, and the district court considered, extensive evidence in support of their claims of emotional distress, including expert testimony and multiple parents' testimony on behalf of every one of the appealing minors. *See* ER-104-105 (citing testimony from Mrs. Dietz, Mr. Dietz, Dr. Clark, and Dr.

21

Smith regarding V.D.'s claims for emotional distress); ER-108-111 (citing testimony from Mr. Feindt, Mrs. Feindt, Dr. Clark, Dr. Smith, and additional life care planning experts regarding P.G.F.'s emotional distress claims); ER-112-113 (citing testimony from Mr. Feindt, Mrs. Feindt, Dr. Clark, and Dr. Smith regarding T.F.'s emotional distress claims); ER-119-122 (citing testimony from Mrs. Freeman, Mr. Freeman, Dr. Clark, and Dr. Smith, in additional to extensive medical records regarding D.F.'s claims for emotional distress); ER-136 (citing testimony from Dr. Clark regarding D.J.'s claims for emotional distress); ER-136-138 (citing testimony from Mrs. Jessup, Dr. Clark, and Dr. Smith regarding N.J.'s claims for emotional distress). For the seven appealing minors, the district court then made individualized determinations that: (1) B.D. and P.G.F. suffered emotional distress as a result of the Fuel Release, and received damages awards reflecting such, ER-102-104, 108-112; (2) D.F., T.F., and N.J. suffered emotional distress, but from causes other than the Fuel Release, ER-112-113, 119-122, 136-138; and (3) V.D. and D.J. did not suffer emotional distress, ER-104-105, 136.

Plaintiffs take issue with the district court's findings that some of the minors suffered emotional distress from causes other than the Fuel Release, arguing that everything after the release is a foreseeable "downstream" effect that *must* lead to an emotional distress finding. App. Br. 24–25. As an example, Plaintiffs point to N.J.'s distress associated with the family's decision to move to Arizona from

Hawaii six months after the Fuel Release in May 2022. *Id.* at 24. From this, they argue that the district court committed clear error in finding that Plaintiffs failed to prove that the Fuel Release was a legal cause of the distress associated with the relocation. *Id.* at 24-25. But Plaintiffs ignore that the district court made its causation finding after hearing evidence that the Jessups had originally planned to move from Hawaii prior to the Fuel Release and that their move was necessitated by Mr. Jessup's retirement from the Navy. ER-545:11-20.

Next, Plaintiffs argue that the district court erred in determining that the youngest Plaintiffs had not proven emotional distress. App. Br. 23. This argument cannot be reconciled with Plaintiffs' own witnesses' confirmation that the youngest Plaintiffs were less emotionally affected by the spill. *See* ER-770:2-6 (Mr. Jessup testifying that for D.J. and N.J., given their young ages, "I don't think they have a full understanding of, you know, what was going on at that point in time, so I'm not going to speak to their emotional distress."), 378:19-20 (Mrs. Feindt testifying "I pray to God that my son [age one at the time of the spill] never remembers this."); *see also* ER-104-105 (relying on Dr. Smith's testimony that V.D. had "little if any recollection" of the fuel release and Dr. Clark's testimony that V.D. was "doing well" at the time of his evaluation).

Plaintiffs' challenge to the district court's causation findings on emotional distress amounts to a disagreement with the district court's credibility and weight

determinations. Such disagreement is insufficient to establish clear error. *United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009) ("[O]ur review of a factual finding may *not* look to what we would have done had we been in the trial court's place in the first instance[.]") (emphasis in original).

## II. The District Court Awarded Damages Commensurate with Its Causation and Injury Findings.

Plaintiffs next argue that the awards are inadequate because they are "effectively nominal." App. Br. 27. In evaluating a challenged award under the FTCA, the Ninth Circuit compares the award to similar awards within the relevant jurisdiction. *McCarthy,* 870 F.2d at 1500 (. Plaintiffs have failed to carry their burden to challenge this award, in that they do not cite a single comparable award—much less one that would establish this award as insufficient. *See generally* App. Br. 26–29. Nor could they, as comparable cases demonstrate the consistency of the trial court's award with prevailing practice in cases of alleged toxic exposure. *See, e.g., Green v. Costco Wholesale Corp.*, 1995 WL 778684 (Haw. Cir. Ct., Arb. Oct. 1995) (awarding $5,000 in pain and suffering to three-year-old plaintiff in Hawaii food poisoning case); *see also Doe v. Lincoln Military Prop. Mgmt. LP*, No. 20-cv-00224-GPC-AHG, 2020 WL 5587488, at *1, 6 (S.D. Cal. Sept. 18, 2020) (finding two-year-old plaintiff's recovery of $1,277.04 fair and reasonable for injuries stemming from exposure to black mold, including wet coughs, eye infections, sinus infections, and lethargy, resulting in multiple

24

emergency room visits); *Tipton v. Camp Pendleton & Quantico Housing, LLC*, 2022 WL 5133481, at *1, *3 (S.D. Cal. Oct. 4, 2022) (finding awards of $3,750 to then ten- and fourteen-year-old plaintiffs to be fair and reasonable for injuries including apnea, difficulty breathing, sleep walking, rashes, behavioral issues, and psychological symptoms).[5]

Plaintiffs' argument that the district court erred by applying a "mechanical halving" to damages awards for injuries that aggravated preexisting conditions is contrary to well-settled Hawaii law. App. Br. 27; *see Montalvo v. Lapez*, 884 P.2d 345, 363 (Haw. 1994). Under *Montalvo*, if a plaintiff's preexisting condition was not fully resolved at the time of an accident, then the factfinder must apportion damages between the preexisting condition and the injuries caused by the accident. *Id.* If the factfinder is unable to apportion, then damages must be distributed equally among the accident and the preexisting condition. *Id.*; *see also* ER-173 (applying *Montalvo*).

Here, the district court made detailed findings that many Plaintiffs, including appealing minors B.D., P.G.F., T.F., and N.J., were not fully recovered from their preexisting conditions at the time of the Fuel Release. ER-33-34, 46-47, 49-50, 87. The district court then apportioned the damages equally between the Fuel Release

---

[5] Hawaii courts look to California case law for guidance regarding tort law issues. *See, e.g.*, *Aana v. Pioneer Hi-Bred Int'l, Inc.*, No. CIV. 12-00231 LEK, 2014 WL 806224, at *13 (D. Haw. Feb. 27, 2014).

and their preexisting conditions. *See id*. Plaintiffs criticize the district court for finding "no evidence to base apportionment," App Br. 27, but fail to include that their own expert testified that, "I cannot apportion what is new versus what was preexisting." ER-876:22-877:1 (testimony of Dr. Steven Bird). It is Plaintiffs' burden to prove their damages. *See Tourgeman*, 900 F.3d at 1109. The district court's acknowledgement of their failure to do so does not constitute clear error.

Further, Plaintiffs' reliance on *United States v. English* is inapt. *See* App. Br. 30 (citing 521 F.2d 63 (9th Cir. 1975)). In *English*, the Court granted the government's appeal of an FTCA damages award because "considering both Federal and California law, an award for lost wages . . . must be discounted to its net present value." *Id*. at 71-72 (citing cases). But this is not a lost wages case under California law, nor do Plaintiffs cite any rule under Hawaii law requiring calculation of general damages according to any particular formula. *Cf. Campbell*, 632 P.2d at 1070 (affirming damages instructions that the jury should "determine an amount which your own experience and reason indicates would be sufficient in light of all of the evidence").

## III. There is No Requirement for the District Court to Award Damages Pursuant to a Mathematical Formula.

Plaintiffs argue that the district court's damages awards are clearly erroneous because (1) each Plaintiff received the same $1,000 in hedonic damages, App Br. 31–32, and (2) Plaintiffs with the same symptoms received different

26

general damages awards, *id.* at 33–34. Both arguments are premised upon an unsupported assumption that the factfinder must explain its awards with the certainty of a mathematical formula. *See* App. Br. 26. Plaintiffs do not cite a single case, statute, or rule that requires the factfinder to provide detailed calculations for awards or justifications for different awards to different Plaintiffs. Rather, "the question is whether the amounts are grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Sutton*, 26 F.3d at 918. Once again, Plaintiffs ascribe error to a failure to comply with a non-existent rule.

Plaintiffs' argument that identical awards to different Plaintiffs for individualized injuries constitute reversible error has been flatly rejected by the Ninth Circuit. *See Sutton*, 26 F.3d at 918. In *Sutton*, the United States appealed a district court's award of $75,000 in wrongful death damages to each of five survivors, arguing that the identical awards were clearly erroneous because "human nature does not justify an assumption, such as the one obviously made by the Court below, that five individuals, of different backgrounds, would each treat their parents, all in different economic and social environments, identically." *Id.* The Ninth Circuit rejected that argument:

> This assertion very well may be true and probably would require reversal of the damage awards if we required damage awards to be made with mathematical certainty. We do not. The question is

whether the amounts are grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork.

*Id.* Because the awards in *Sutton* were based upon consideration of testimony, the district court was entitled to deference, and appellants could not demonstrate that such awards were "based only on speculation or guesswork." *Id*. Likewise, here, the district court's award of $1,000 in hedonic damages to each Plaintiff in this case was based upon consideration of testimony and thus not "based only on speculation or guesswork." *See* ER-141-154 (detailed findings of fact regarding each Plaintiffs' claim for hedonic damages); *see also Castro*, 414 P.3d at 69 ("This is not a case in which damages were capable of ascertainment by calculation.").

Plaintiffs' argument that the general damages awards are clearly erroneous fails for the same reason. Plaintiffs argue that because individual Plaintiffs asserted similar injuries, the district court was required to award the same general damages. App Br. 33–35. But just as *Sutton* holds that awarding disparate Plaintiffs the same number is not clear error, the law does not require awarding similar claims identical numbers. *See Sutton*, 26 F.3d at 918. Further, Plaintiffs' argument that the district court erred by varying awards with age ignores the plain language of Hawaii law, which provides that in determining compensatory damages, the factfinder "may consider the *age*, health, habits, and condition of the injured party." *Lauer v. Young Men's Christian Ass'n of Honolulu*, 557 P.2d 1334, 1340

28

(Haw. 1976) (emphasis added); *see also* ER-172-173 (citing *Lauer* in determining the amount of damages).

As the *Lauer* court noted, "[b]ecause there is no arithmetical way in which to determine compensation for pain and suffering, of necessity the measurement of such compensation must be left entirely to the [factfinder]." 557 P.2d at 1340. And the "pain for which the plaintiff recovers is only what is found by the" factfinder. *Id.* Hawaii law likewise gives broad discretion to the factfinder to make a subjective determination of hedonic damages:

> The measurement of the joy of life is intangible. A jury may draw upon its own life experiences in attempting to put a monetary figure on the pleasure of living. It is a uniquely human endeavor . . . requiring the trier of fact to draw upon the virtually unlimited factors unique to us as human beings.

*Castro*, 414 P.3d at 69 (quoting *Montalvo*, 884 P.2d at 366).

Here, the district court made both general damages and hedonic damages awards based upon a two-week trial with more than forty witnesses and 650 exhibits and issued detailed findings regarding the alleged injuries claimed by each Plaintiff. *See* ER-141-154. Appellants have therefore failed to carry their burden to demonstrate that the awards were "based only on speculation or guesswork." *Sutton*, 26 F.3d at 918. Because the awards reflect an approximation of each Plaintiff's injuries within the subjective view of the factfinder, they are entitled to deference and should not be overturned.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court affirm the foregoing judgement of the district court.

May 4, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JONATHAN D. GUYNN
Deputy Assistant Attorney General

J. PATRICK GLYNN
Director

*/s/ Caroline W. Stanton*
CAROLINE W. STANTON
DC Bar # 1010918
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Environmental Tort Litigation
1100 L St., NW
Washington, DC 20005
Phone: 202-598-9070
E-mail: caroline.w.stanton@usdoj.gov

*Attorneys for the United States of America*

## STATEMENT OF RELATED CASES

The government is not aware of any related cases within the meaning of Ninth Circuit Rule 28-2.6.

32

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit Electronic Case Filing (ECF) system of this Court. The ECF system will send a "Notice of Electronic Filing" to the attorneys of record.

*/s/ Caroline W. Stanton*

Caroline W. Stanton