**No. 25-7162**

---

In the United States Court of Appeals
for the Ninth Circuit

---

Feindt, et al.,

Plaintiffs—Appellants,

v.

United States of America,

Defendant—Appellee.

---

Appeal from the United States
District Court for the District of Hawaii
Case No. 1:22-cv-00397-LEK-KJM; Case No. 1:22-cv-
00457-LEK-KJ; Case No. 1:22-cv-00059-LEK-KJM

---

**Appellants' Reply Brief**

---

Lyle Hosoda
Hosoda Law Group
3 Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, HI 96813
(808) 524-3700

Frederick C. Baker
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
Chad Flores
Flores Law PLLC

917 Franklin Street, Suite 600
Houston, TX 77002
(713) 364-6640

Kristina S. Baehr
Just Well Law, PLLC
2606 W 8th Street, Unit 2
Austin, TX 78703
(512) 994-6241

Counsel for Appellants

## Table of Contents

Reply ............................................................................................................1

I.    The district court's damages findings used three legally invalid methods. ....3

    A.    The district court imposed a legally invalid independent-proof requirement for emotional-distress damages........................................3

        1.    The "no legal cause" label does not insulate the legal error......3

        2.    Hawaii law forecloses the independent-proof requirement........5

        3.    Extensive findings can be just as wrong. ...................................6

    B.    The district court reduced found acute poisoning injuries to near-nominal awards without a reviewable method. ........................... 8

        1.    T.F.'s award exposes the absence of a reasoned bridge. ............9

        2.    Duration limits and preexisting conditions do not explain the awards. ...................................................................................10

        3.    Appellate triage is not waiver. ................................................ 11

        4.    The Government's comparators cannot supply the district court's missing reasoning. .......................................................12

        5.    Neither *Montalvo* nor *English* saves the awards..........................14

    C.    The awards are internally inconsistent...............................................15

        1.    T.F. versus V.D. shows the awards run backward. ..................16

        2.    The Jessup spread shows the same defect at household scale..17

        3.    The flat hedonic award confirms an unexplained schedule......18

        4.    Hawaii law permits consideration of age; it does not permit age to replace individualized findings...................................... 20

Conclusion ................................................................................................ 22

Certificate of Compliance.................................................................................. 2

ii

## Table of Authorities

**Cases**

*Anderson v. City of Bessemer City, N.C.*,
 470 U.S. 564 (1985) ....................................................................................6

*Campbell v. Animal Quarantine Station*,
 632 P.2d 1066 (Haw. 1981) .........................................................................5

*Castro v. Melchor*,
 414 P.3d 53 (Haw. 2018)............................................................................. 19

*Felder v. United States*,
 543 F.2d 657 (9th Cir. 1976) ...............................................................5, 15, 21

*Green v. Costco Wholesale Corp.*,
 1995 WL 778684 (Haw. Cir. Ct., Arb. Oct. 1995)......................................... 13

*In re de Jong*,
 588 B.R. 879 (B.A.P. 9th Cir. 2018) ............................................................12

*Lauer v. Young Men's Christian Ass'n of Honolulu*,
 557 P.2d 1334 (Haw. 1976)......................................................................8, 20

*McCarthy v. United States*,
 870 F.2d 1499 (9th Cir. 1989) ..................................................................... 13

*Montalvo v. Lapez*,
 884 P.2d 345 (Haw. 1994) ...........................................................................14

*Sutton v. Earles*,
 26 F.3d 903 (9th Cir. 1994) ........................................................................18

*Tipton v. Camp Pendleton & Quantico Housing, LLC*,
 2022 WL 5133481 (S.D. Cal. Oct. 4, 2022) ................................................ 13

*Tortu v. Las Vegas Metro. Police Dep't*,
    556 F.3d 1075 (9th Cir. 2009) ........................................................................5, 6

*United States v. English*,
    521 F.2d 63 (9th Cir. 1975) ...........................................................................14

*United States v. Kirilyuk*,
    29 F.4th 1128 (9th Cir. 2022) ....................................................................... 11

*United States v. Lopez*,
    4 F.4th 706 (9th Cir. 2021) ...........................................................................12

*Zhang v. American Gem Seafoods, Inc.*,
    339 F.3d 1020 (9th Cir. 2003) .........................................................................5

**Reply**

The district court's damages method failed because age became the proxy for the difference between children. Hawaii law permits age to inform damages. It does not permit age to become the only apparent basis for sharply different awards among children who suffered the same exposure, lived through the same household disruption, and had credited physical reactions to the same jet-fuel contamination. Yet that is what the award pattern shows.

That age-driven method explains this appeal. Older plaintiffs did not appeal after four years of litigation. The youngest plaintiffs did because the errors fell hardest on them. That appellate choice concedes nothing about unappealed awards. It reflects triage. The appealed awards expose the legal defect.

The defect is not subtle. T.F. was twenty months old. The court found nausea, vomiting, diarrhea, breathing difficulty, and emergency-room treatment. It still awarded him only $3,000 in general damages and the same $1,000 hedonic award it gave every bellwether plaintiff. V.D., by contrast, had a shorter, non-ER episode and received $10,000. No finding explains that inversion. The only apparent basis for that difference is age.

The Jessup awards show the same problem at household scale. Four children lived in the same home, faced the same exposure, endured the same five-month separation from their father, and relocated together to Arizona. Yet the court produced a 15-to-1 spread untied to symptom severity, duration, medical intervention, preexisting condition, or any other compensable distinction. Differentiation requires a damages reason. The court supplied none.

The flat hedonic award confirms the methodological error. Hedonic damages compensate loss of enjoyment of life—the impaired ability to experience ordinary pleasures, routines, activities, relationships, and developmental incidents of life. Castro requires individualized consideration of the "virtually unlimited factors" unique to the injured person. The district court did the opposite. It gave infants, toddlers, teenagers, and adults the same $1,000 hedonic figure despite materially different ages, injuries, disruptions, and losses.

The court also imposed an unlawful independent-proof requirement for emotional-distress damages. It found acute physical injury for every appealing minor, then denied emotional-distress damages to five children because they lacked a separate evidentiary channel—a child-specific verbal account, diagnosis, or psychological corroboration. Hawaii law rejects that prerequisite. Emotional distress

2

may be proved by testimony, circumstances, physical manifestations, behavior, and reasonable inference.

The remaining limits do not save the awards. Duration limits, preexisting conditions, and apportionment may narrow compensable injury. They do not value the injury that remains. Apportionment divides responsibility; it does not price harm. Age may affect valuation; it cannot override credited symptoms, emergency-room treatment, household disruption, and loss of normal life.

Clear-error review does not protect a defective damages method. The court made legal-method errors, not merely debatable pricing judgments. The awards should be vacated and remanded.

## I.     The district court's damages findings used three legally invalid methods.

### A.     The district court imposed a legally invalid independent-proof requirement for emotional-distress damages.

#### 1.     The "no legal cause" label does not insulate the legal error.

The Government's forfeiture argument fails. The Government says Appellants accept the district court's "causation findings." Br. 21. The opening brief is precise about what is accepted: "Its stipulation of negligence, the court's causation findings, and its determination that each minor plaintiff suffered compensable injury caused by the fuel release are now established." App. Br. 14.

Physical-injury causation is accepted. The "no legal cause of emotional distress" findings are challenged. They rest on a legally invalid proof requirement.

A "legal cause" label does not insulate legal error. *United States v. Hinkson,* 585 F.3d 1247 (9th Cir. 2009) (en banc), governs legal-standard review regardless of the trial court's chosen label. The court found acute physical injury for every appealing minor. 1-ER-6 ¶¶ 28–34. It then denied emotional-distress damages for V.D., T.F., D.F., D.J., and N.J. 1-ER-104, 112–13, 119–22, 136–38.

Those denials rest on an independent-proof requirement. The court did not weigh reasonable inferences from credited acute injury, child-specific suffering, evacuation, disruption, and loss of normal home life. It required a separate evidentiary channel for emotional distress. That is the legal error. A factfinder cannot save a legal error by recasting its conclusion as causation.

The error appears in the court's stated reasons. For the youngest children, the court did not reject emotional distress because it found them calm, unaffected, or uninjured. It rejected distress because the record lacked a separate kind of proof: a child-specific verbal account, diagnosis, or independent corroboration beyond the injury narrative. That is not weighing an inference. It is refusing to draw one unless plaintiffs supply a separate evidentiary category.

### 2. Hawaii law forecloses the independent-proof requirement.

The Government's choice-of-law move fails. Br. 16–17. Hawaii law governs FTCA damages standards; federal law governs appellate review of FTCA findings. *See Felder v. United States*, 543 F.2d 657, 664–65 (9th Cir. 1976). That distinction matters, but it does not help the Government. Hawaii law and Ninth Circuit FTCA review apply the same damages premise here: non-pecuniary damages require judgment, not a separate evidentiary prerequisite.

*Campbell* supplies the Hawaii rule. It rejects the premise that emotional distress requires medical testimony, expert diagnosis, or witness opinion. *Campbell v. Animal Quarantine Station*, 632 P.2d 1066, 1070 (Haw. 1981). The district court recognized that "medical testimony is not a prerequisite" for emotional-distress recovery. 1-ER-161. That rule gives the factfinder discretion to value emotional distress. It does not permit refusal to draw ordinary inferences from injury, age, symptoms, behavior, and circumstances.

*Zhang* and *Torto* confirm the same principle. Emotional-distress damages "may be awarded based on testimony alone or appropriate inference from circumstances." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1030 (9th Cir. 2003). A court errs when it fails to consider emotional injury supported by the record. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1086–87 (9th Cir.

2009). And the Government's own brief acknowledges that Hawaii courts look to California tort law for guidance. Br. 25 n.5. The jurisdictional distinction therefore changes nothing material.

The "may" versus "must" distinction does not help the Government. Br. 22. Appellants do not argue automatic emotional-distress awards. They argue that a court may not impose a standalone-corroboration requirement inconsistent with ordinary tort damages principles. *Campbell, Zhang, and Tortu* prescribe what a factfinder may not do. They do not compel any particular amount.

The court asked the wrong question. It did not ask whether emotional distress could reasonably be inferred from acute poisoning symptoms, caregiver testimony, disrupted routines, evacuation, and child behavior. It asked whether Plaintiffs supplied independent psychological proof. That standard was wrong.

### 3. Extensive findings can be just as wrong.

Volume is not test-application. The Government answers with the length of the district court's emotional-distress discussion. Br. 22; ER-92–141. But a court can produce extensive findings while applying the wrong rule. *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985), does not protect findings that apply an invalid standard.

6

The awards to B.D. and P.G.F. do not save the rule. Br. 20. Appellants never argued a categorical bar. The argument is narrower. The court imposed an independent-proof requirement. B.D. and P.G.F. met that requirement. That does not make the requirement lawful for V.D., T.F., D.F., D.J., and N.J.

Parental testimony does not help the Government either. Br. 23. Mrs. Feindt's statement—"I pray to God that my son never remembers this"—is not proof that T.F. suffered no distress during ER-level vomiting and breathing difficulty. Mr. Jessup's refusal to "speak to" his children's emotional distress is not proof they did not suffer it. Parents need not offer clinical legal-cause opinions for a court to infer distress from a child's injuries and circumstances.

Emotional distress may be proved by direct testimony, caregiver testimony, physical manifestations, behavior, circumstances, and reasonable inference. The court could reject weak inferences. It could not refuse to consider them because they were not packaged as standalone psychological proof.

Nor do the court's duration cutoffs cure the error. Even accepting the district court's physical-injury windows, the court found acute illness during those windows. Short duration may affect amount. It does not justify a categorical refusal to consider emotional distress from vomiting, diarrhea, breathing difficulty, evacuation, and disrupted home life. The same legal error persists in compressed form.

7

The rule is clear. A factfinder may not deny emotional-distress damages for lack of an evidentiary channel separate from credited acute injury and traumatic context. The error requires vacatur as to V.D., T.F., D.F., D.J., and N.J.

### B. The district court reduced found acute poisoning injuries to near-nominal awards without a reviewable method.

The error is methodological, not numerical. The district court made individualized injury findings, then used legally inadequate valuation shortcuts. Duration limits, preexisting conditions, and apportionment may define the compensable injury. They do not themselves value that injury. The Government answers with deference, waiver, comparators, duration limits, and apportionment. None makes that valuation method lawful. And because Appellants challenge the method, not the amount as excessive or inadequate in isolation, they need not prove a catalog of comparable awards before obtaining review of that legal error.

The valuation error is clearest because age did work that Hawaii law does not permit. Appellants do not contend that age is irrelevant. *Lauer v. Young Men's Christian Ass'n of Honolulu*, 557 P.2d 1334, 1340 (Haw. 1976), permits consideration of age, health, habits, and condition before and after injury. But age is one factor in valuation, not a substitute for valuation. The district court treated the youngest children as though their inability to narrate suffering, remember the event, or present

8

adult-style disruption evidence reduced the compensable value of credited acute poisoning. That is not individualized adjudication. It is an age proxy.

### 1. T.F.'s award exposes the absence of a reasoned bridge.

T.F. shows the defect cleanly. He was twenty months old. The court found the Fuel Release legally caused acute symptoms including nausea, vomiting, diarrhea, and difficulty breathing. ER-47–49. Those symptoms culminated in emergency-room treatment. 1-ER-6 ¶¶ 108, 116–17.

The court awarded $3,000 in general damages. It then gave him the same $1,000 hedonic award it gave every bellwether plaintiff. That treatment cannot be reconciled with the court's own injury findings. A toddler with ER-level vomiting and breathing difficulty did not receive a valuation tied to severity, medical intervention, disruption, or loss of normal life. He received an age-discounted number.

The contrast with V.D. makes the defect unmistakable. V.D. had a shorter, non-ER episode and received $10,000. T.F. had a longer and more medically serious acute episode and received less than one-third of that amount. The Government identifies no compensable distinction explaining that inversion. The only visible distinction doing meaningful work is age.

9

Hawaii law permits judgment. It does not permit valuation by age proxy. Nor does it permit a court to find acute poisoning injuries in a toddler, accept emergency-room treatment as part of the injury narrative, and then value that injury as though it were nominal because the child was too young to describe it in adult terms.

The Government's own closing position underscores the problem. It proposed a higher amount for T.F. than the district court awarded. The issue is not that the court disagreed with the Government's number. The issue is that the court used no lawful valuation principle to reduce ER-level vomiting and breathing difficulty in a toddler to a lower-than-proposed nominal-range award. That is legal-method error.

### 2. Duration limits and preexisting conditions do not explain the awards.

Duration limits, preexisting conditions, and apportionment may narrow the compensable injury. They do not value the injury that remains. A one-week or three-week acute poisoning episode in a child still has compensable value. And no limiting concept explains why T.F.'s ER-level vomiting and breathing difficulty produced less than V.D.'s shorter, non-ER episode. The district court treated limits on causation as valuation. That is the legal-method error.

### 3. Appellate triage is not waiver.

The Government's waiver argument fails because it confuses appellate selection with a merits concession. Appellants challenge a damages methodology. They do not argue that every plaintiff's award must be reopened in this appeal. Nor do they concede that unappealed awards were correct. They seek correction for the plaintiffs who appealed.

That focus is rational. After four years of litigation, older plaintiffs chose not to appeal. The youngest plaintiffs did. They did so because the district court's errors fell hardest on them. The court's method discounted the very plaintiffs least able to provide adult-style testimony, memory, or self-description, even though the court found credited acute physical reactions and compensable disruption.

Ninth Circuit law rejects the Government's premise. "It is claims that are deemed waived or forfeited, not arguments." *United States v. Kirilyuk*, 29 F.4th 1128, 1136 (9th Cir. 2022). Appellants preserved and presented the same claim: the district court used invalid damages methods. They may use the appealed awards that best expose that error.

*In re de Jong*, 588 B.R. 879 (B.A.P. 9th Cir. 2018), confirms the point. A rule requiring parties to challenge every related damages award to preserve a methodology challenge would expand appeals, burden parties and courts, and waste resources. Id. at 892. So too here.

Nor is there waiver. Waiver requires intentional relinquishment of a known right; forfeiture is only the failure to timely assert one. *United States v. Lopez*, 4 F.4th 706, 724 (9th Cir. 2021). Appellants relinquished nothing. They challenged the damages method and identified the minor-plaintiff awards requiring correction.

The Government's rule would punish appellate restraint. It would force parties to attack unappealed awards they need not defend or condemn just to preserve challenges to awards they do challenge. The rules require no such waste.

### 4. The Government's comparators cannot supply the district court's missing reasoning.

The Government's comparator argument answers the wrong appeal. Comparable awards matter when the asserted error is that a lawful award is too high or too low. Appellants make a different claim. The district court found acute poisoning injuries, then valued them through substitutes for valuation—duration, apportionment, age, and a uniform hedonic figure. No set of comparators can cure that legal-method error. A court cannot defend the wrong method by showing that some other factfinder once reached some other number.

*McCarthy v. United States*, 870 F.2d 1499, 1500 (9th Cir. 1989), does not impose a comparator prerequisite for every damages appeal. It directs comparison to "similar awards within the relevant jurisdiction" when the appellate issue is the amount of the award. *McCarthy v. United States*, 870 F.2d 1499, 1500 (9th Cir. 1989). This appeal presents a different error. The district court used an unlawful valuation method. The Government's only Hawaii citation, *Green v. Costco Wholesale Corp.*, 1995 WL 778684 (Haw. Cir. Ct., Arb. Oct. 1995), cannot sanitize that method. It is a 1995 arbitration award with no reasoning.

Worse are *Doe v. Lincoln Military Property Management LP*, No. 20-cv-00224-GPC-AHG, 2020 WL 5587488 (S.D. Cal. Sept. 18, 2020), and *Tipton v. Camp Pendleton & Quantico Housing, LLC*, 2022 WL 5133481 (S.D. Cal. Oct. 4, 2022). Both are unpublished district court orders. Both involve different exposures, different injuries, and different procedural postures. Neither approves the method used here: finding acute poisoning symptoms, ER treatment, and respiratory distress, then valuing those injuries through a nominal-range approach untethered to Hawaii damages principles.

The Government's comparator set does not vindicate the awards. It confirms that no cited Ninth Circuit or Hawaii authority sanctions the method used below.

13

### 5.    Neither *Montalvo* nor *English* saves the awards.

*Montalvo v. Lapez*, 884 P.2d 345 (Haw. 1994), does not solve the problem. Even assuming equal apportionment was permissible for overlapping physical symptoms, apportionment is not a valuation method. Equal apportionment supplies, at most, a percentage of responsibility. It does not supply the underlying value, the hedonic value, or any lawful basis for treating a medically significant acute episode as a nominal-range injury.

The Government's apportionment argument repeats that category mistake. Apportionment divides responsibility. It does not price the compensable harm.

The Government's reliance on Dr. Bird's inability to apportion likewise misses the issue. Apportionment divides harm between causes. It does not value the compensable portion of the harm. The district court therefore committed legal-method error by using apportionment concepts to do valuation work they cannot do.

The Government's treatment of *United States v. English*, 521 F.2d 63 (9th Cir. 1975), also fails. Br. 26. *English* reversed an FTCA award for failure to apply a required damages methodology. *Id.* at 71–72. The Government reads it as a present-value-discounting case only. But the principle matters here: an FTCA court must use the damages method required by law. An award produced by the wrong method is reversible even if the final number could have been reached through a lawful one.

14

So does *Felder v. United States*, 543 F.2d 657 (9th Cir. 1976). The Ninth Circuit corrected non-pecuniary FTCA awards that did not reflect individualized findings. *Id.* at 674–76. That is the defect here. The district court identified real injuries, then used valuation methods that did not legally account for them: nominal-range acute-injury awards, a flat hedonic figure, and unexplained disparities among similarly situated children.

The rule is clear. A court must translate injury findings into damages using a lawful valuation method. These awards do not. They treat causation limits, apportionment, age, and uniform hedonic scheduling as substitutes for individualized damages valuation.

### C. The awards are internally inconsistent.

Internal inconsistency is clear error. *Anderson*, 470 U.S. at 575. The district court's findings defeat the district court's awards.

The issue is not whether identical awards are always forbidden. They are not. Uniformity is proper when comparable evidence supports comparable valuation. That principle matters in bellwether litigation, where one purpose of the process is to set values for similarly situated cases.

15

But the inverse is equally true. Sharp differentiation must rest on compensable distinctions. A court may not produce a 15-to-1 spread among children with the same exposure, same household disruption, and same relocation without tying the spread to severity, duration, medical intervention, preexisting conditions, or some other lawful valuation principle. Otherwise, individualized adjudication becomes arbitrary allocation.

That is what happened here. The district court differentiated too much where the evidence warranted rational uniformity, and homogenized too much where the evidence required individualized valuation. It sharply discounted the youngest children through age-driven general-damages awards. Then it gave every bellwether plaintiff the same $1,000 hedonic award despite materially different losses. Both moves reflect the same legal error: valuation by proxy rather than valuation of compensable harm.

### 1. T.F. versus V.D. shows the awards run backward.

T.F. versus V.D. is the clearest example. T.F. suffered acute illness for roughly three weeks. He went to the ER for vomiting and breathing difficulty. 1-ER-6 ¶¶ 108, 116–17; ER-47–49. V.D. had symptoms for roughly one week. She did not go to the ER. 1-ER-6 ¶¶ 63–73; ER-34–36.

16

T.F. received $3,000. V.D. received $10,000. The Government identifies no finding that explains the inversion. None exists. An award running backward to the credited duration, severity, and medical-intervention findings is not "supported by the evidence" under any deferential standard. *Anderson*, 470 U.S. at 574.

### 2.     The Jessup spread shows the same defect at household scale.

. The Jessup spread shows methodological inconsistency. The Government dismisses that spread because B.B.J. and B.J.J. are not appealing. Br. 25 n.4. That fact is true and irrelevant. Relief is sought for D.J. and N.J. But the inconsistency appears from what the court did to the household as a whole.

Four Jessup children faced the same exposure. They lived in the same household. They were separated from their father for the same five months. They were relocated together to Arizona. 1-ER-6 ¶¶ 392–93, 406, 411–14. Yet the court produced a 15-to-1 spread between the highest and lowest awards.

That spread reflects no lawful damages method. The court did not tie it to symptom severity, duration, medical intervention, preexisting condition, or any other compensable distinction. A child in the same home with the same exposure and same household disruption received a fraction of another child's award because the court over-weighted age without explaining why age justified that damages cliff.

17

That is not individualized adjudication. It is a defective valuation method masquerading as individualized judgment.

### 3. The flat hedonic award confirms an unexplained schedule.

Hedonic damages compensate loss of enjoyment of life. They address the diminished ability to participate in and experience ordinary pleasures, activities, relationships, routines, recreation, and developmental incidents of life. They are not a duplicate medical-expense award. They compensate the human loss that follows when injury and disruption impair ordinary living.

*Sutton* does not save the uniform hedonic award. There, the Ninth Circuit affirmed identical loss-of-society awards because the evidence supported comparable valuations. *Sutton v. Earles*, 26 F.3d 903, 918 (9th Cir. 1994). Sutton's rule is narrow: identical awards may stand where the evidence supports them.

Appellants do not demand mathematical certainty. *Sutton* does not require it. But *Sutton* still requires a just and reasonable damages inference. The flat $1,000 hedonic award is not a lawful inference from individualized findings. It is a uniform schedule applied despite different ages, symptoms, disruptions, activities, and developmental losses.

18

The district court found materially different hedonic losses. Teenagers lost recreational activities, social development, and athletic participation. 1-ER-6 ¶¶ 392–414. Infants and toddlers experienced different losses in different forms and on different timelines. T.F. was twenty months old and required emergency-room treatment. D.J. was ten months old and formula-fed. N.J. was four years old, autistic, and had mast-cell disease. Those distinctions matter to enjoyment-of-life valuation.

Then the court awarded each of the seventeen bellwether plaintiffs—infants, toddlers, teenagers, and adults—the same $1,000 hedonic figure.

That uniform number reflects the wrong legal method. Uniformity can be lawful when comparable evidence supports comparable valuation. But Castro requires individualized consideration of "the virtually unlimited factors unique to us as human beings." *Castro v. Melchor*, 414 P.3d 53, 69 (Haw. 2018). A flat hedonic schedule does not apply that principle. It displaces it.

The problem is especially stark because both sides proposed materially higher inconvenience-type damages than the court awarded. The district court was not bound by either side's proposal. But when it rejected both parties' valuation range and imposed a flat $1,000 hedonic figure across every bellwether plaintiff, it had to supply a reasoned damages method. It did not.

19

### 4. Hawaii law permits consideration of age; it does not permit age to replace individualized findings.

*Lauer* does not authorize the Government's age-based defense. Br. 28. *Lauer* permits the factfinder to consider "the age, health, habits, and condition of the injured party before his injury as compared with his condition as a result of the injury." *Lauer v. Young Men's Christian Ass'n of Honolulu*, 557 P.2d 1334, 1340 (Haw. 1976).

Age may matter. It may affect how injury is experienced, proved, remembered, and valued. But it cannot become the controlling variable. A young child's inability to narrate distress does not erase distress. A toddler's inability to describe lost enjoyment does not eliminate lost enjoyment. An infant's developmental stage may change the form of loss; it does not make the loss legally nominal.

That is the problem here. The award pattern makes age do legal work it cannot do. Age appears to have overridden credited acute symptoms, emergency-room treatment, household disruption, and loss of normal life. It produced steep general-damages disparities where the evidence warranted rational uniformity, while the flat hedonic award imposed uniformity where the evidence required individualized valuation.

20

*Felder* confirms the same point under Ninth Circuit FTCA review. Non-pecuniary damages must reflect individualized findings, and rational uniformity must be maintained where the evidence warrants it. *Felder*, 543 F.2d at 674–76. Hawaii law is no different in substance. *Castro* requires individualized consideration of hedonic loss; *Lauer* permits age as one factor, not as a substitute for injury valuation.

The appealed awards violate both principles. The general-damages awards over-weight age. The hedonic awards erase individual difference. Together, they show that the district court did not translate compensable injury into damages through a lawful valuation method.

## Conclusion

The awards should be vacated and remanded.

/s Chad Flores

Lyle Hosoda
Hosoda Law Group
3 Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, Hawaiʻi 96813
(808) 524-3700

Frederick C. Baker
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
Chad Flores

Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

Kristina S. Baehr
Just Well Law, PLLC
2606 W 8th Street, Unit 2
Austin, TX 78703
(512) 994-6241

Counsel for Appellants

22

**Certificate of Compliance**

I am the attorney for Appellants. This brief contains 6,837 words, including 0 words manually counted in any visual images, and excluding the items exempted by Federal Rule of Appellate Procedure 32(f). The brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6). I certify that this brief complies with the word limit of Ninth Circuit Rule 32-1.

<u>s/Chad Flores</u>
Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

Counsel for Appellants